**GLOBE CARDBOARD NOVELTY CO., Inc., et al. v. FEDERAL TRADE COMMISSION.**

No. 10424.

United States Court of Appeals Third Circuit.

Argued Oct. 4, 1951.

Decided Nov. 16, 1951.

Michael von Moschzisker, Philadelphia, Pa. (Nathan Lavine, Alexander B. Adelman, Philadelphia, Pa., on the brief), for petitioners.

John W. Carter, Jr., Washington, D. C. (W. T. Kelley, Gen. Counsel, James W. Cassedy, Asst. Gen. Counsel, Washington, D. C., on the brief), for Federal Trade Commission.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

We are asked to review a cease and desist order entered by the Federal Trade Commission against petitioners.

The Commission instituted this proceeding by a complaint issued on August 10, 1942. An answer was duly filed and hearings were subsequently held. On April 21, 1950, petitioners filed a substituted answer in which they admitted all the material allegations of fact set forth in the complaint and waived all intervening procedure and further hearing as to the facts. The Commission rendered findings of fact based on the allegations of the complaint. The salient facts so found are that petitioners manufacture and sell in interstate commerce push cards and punchboards. Some of their products are sold to manufacturers, wholesalers, and jobbers of candy, cigarettes and other articles of merchandise, who, in turn, pack the push cards and punchboards with their merchandise and sell the assortments in interstate commerce to retailers. Petitioners also sell directly to retailers. Thus, all petitioners' devices flow either directly or indirectly into the hands of retailers, who utilize petitioners' products as sales promotional devices. The Commission found that the sale of merchandise to the public by means of these devices involves a game of chance or the sale of a chance to procure articles of merchandise at prices much less than the normal retail prices, thereby encouraging members of the public to gamble. The Commission further found that consumers are induced to deal with those retailers who utilize lottery methods to the detriment of retailers who refrain from using such sales promotional schemes. At the manufacturers' and wholesalers' levels, the same forces are at work: trade is diverted from manufacturers and wholesalers who do not pack lottery devices with their merchandise. The Commission concluded that, by placing in the hands of others the means of conducting lotteries in the sale of merchandise, petitioners had committed unfair acts and practices in commerce within the meaning of Section 5 of the Federal Trade Commission Act.[1]

The order of the Commission, issued December 29, 1950, directed petitioners to cease and desist from "selling or distributing in commerce, as 'commerce' is defined in the Federal Trade Commission Act, push cards, punchboards, or other lottery devices which are to be used, or may be used, in the sale or distribution of merchandise to the public by means of a game of chance, gift enterprise, or lottery scheme."

1. "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful. * * *" Act of Sept. 26, 1914, c. 311, § 5, 38 Stat. 719, as amended by the Act of Mar. 21, 1938, c. 49, § 3, 52 Stat. 111, 15 U.S.C.A. § 45(a).

446

Petitioners attack the order of the Commission on the ground that their sales of lottery devices do not constitute unfair practices in commerce within the contemplation of Section 5 of the Federal Trade Commission Act. They argue that they compete fairly with their competitors in the punchboard business; that any unfairness is committed by their vendees who utilize lottery methods to distribute their merchandise. Thus, we are urged to hold that petitioners' activities are beyond the jurisdiction of the Commission.

■ Since the decision of the Supreme Court in Federal Trade Comm. v. Keppel & Bro., 1934, 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814, it has been settled law that the sale of merchandise by lottery methods constitutes an unfair method of competition under Section 5 of the Federal Trade Commission Act. Thus, we accept as our starting point the proposition that it is contrary to the public policy of the United States for sellers to market their goods by taking advantage of the consumer's propensity to take a chance. Petitioners actively aid and abet others to commit such unfair practices. They manufacture and sell devices the sole function of which is to sell merchandise by lottery methods. Does this render petitioners' interstate sales of lottery devices unfair? We are in agreement with the Commission's affirmative answer.

■ The instant proceeding no doubt would have been beyond the jurisdiction of the Commission under the unamended Federal Trade Commission Act, as interpreted by the Supreme Court in Federal Trade Comm. v. Raladam Co., 1931, 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324. The Wheeler-Lea amendment,[2] however, effectively broadened the scope of the Commission's powers. Not only unfair methods of competition in commerce were restrainable, but Section 5 was expanded to embrace unfair and deceptive practices in commerce as well.

It has generally been agreed that the purpose of the amendment was to eliminate the necessity of proving competition. All the Commission need show now is that there is an act or practice in commerce inimical to the public interest. Perloff v. Federal Trade Comm., 3 Cir., 1945, 150 F.2d 757, 759; Progress Tailoring Co. v. Federal Trade Commission, 7 Cir., 1946, 153 F.2d 103, 105.[3] Hence, the fact that petitioners are not unfair toward other manufacturers of lottery devices does not preclude the Commission from assuming jurisdiction.

■ The exact issue with which we are faced has been raised on petition for review in only one prior case. In Charles A. Brewer & Sons v. Federal Trade Comm., 6 Cir., 1946, 158 F.2d 74, the Court of Appeals for the Sixth Circuit affirmed an identical cease and desist order.[4] The fact situation in the Brewer case is, in all material respects, the same as that in the case at bar. That court concluded that the petitioners there had aided, abetted, and induced manufacturers and wholesale and retail dealers in merchandise to use unfair or deceptive acts or practices and unfair methods of competition. In so doing, the court found that petitioners themselves had committed unfair practices. We think the decision in the Brewer case is a sound one and in harmony with the Congressional intent behind the Wheeler-Lea amendment.

■ The opinion in the Brewer case relies in part on the common-law rule of unfair competition that one who furnishes another with the means of consummating a fraud is himself a wrongdoer. See Coca-Cola Co. v. Gay-Ola Co., 6 Cir., 1912, 200 F. 720; see also Federal Trade Comm. v. Winsted Co., 1922, 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729. We agree that the above-stated rule can be applied as an apt analogy here.

Petitioners argue that the Brewer case was wrongly decided and is contrary to the

2. Act of March 21, 1938, c. 49, § 3, 52 Stat. 111, 15 U.S.C.A. § 45(a).

3. Of course, the courts must be the final arbiter of what trade practices are to be deemed unfair, even though the determination of the Commission is entitled to considerable weight. Federal Trade

Comm. v. Keppel & Bro., 1934, 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814.

4. Compare the facts in Modernistic Candies v. Federal Trade Comm., 7 Cir., 1944, 145 F.2d 454, where an order of the Commission was affirmed.

decision of this court in Scientific Mfg. Co. v. Federal Trade Comm., 3 Cir., 1941, 124 F. 2d 640. A careful study of these two cases, however, has convinced us that they are not contradictory. The Scientific Mfg. Co., which was in fact the *alter ego* of one Force, was engaged in the publication and sale of pamphlets. Force, a chemist and pharmacist, held unorthodox beliefs about the dangers inherent in the use of aluminum cooking utensils. In fact, he attributed to the use of aluminum utensils practically all the ills which beset mankind. These ideas he incorporated into pamphlets which were sold in interstate commerce. While the pamphlets were sold generally to the public, certain manufacturers and distributors of non-aluminum cooking utensils displayed an especial interest in Force's theories. About 20% of these pamphlets came into the hands of these manufacturers and distributors who made use of the pamphlets to stimulate sales of their products. The Commission found that the representations made in the pamphlets were false, misleading and disparaging, and that through their sale Force was supplying an instrumentality by means of which uninformed and unscrupulous manufacturers and distributors were able to deceive members of the public, thereby inducing them to purchase non-aluminum utensils. The Commission concluded that the sale of Force's pamphlets constituted unfair and deceptive acts and practices in commerce, and a cease and desist order was issued. Upon petition for review, this court set aside the order of the Commission, holding such order to be beyond the powers granted it under the Act.

We think the Scientific case is readily distinguishable from the Brewer case. In fact, the two cases illustrate very clearly some of the bounds of the Commission's power. In the former case Force was in the business of disseminating ideas. His ideas, while unorthodox and no doubt false, were sincerely held by him. He did not intend that his pamphlets be used to sell cooking utensils or any other product. The function of his pamphlets was merely to disseminate his opinions—not to sell merchandise. The use of the pamphlet for the sale of merchandise was a clear perversion of its primary function. In the instant case, however, petitioners' punchboards and push cards were designed for the specific purpose of selling merchandise by lottery. This is their sole function. The Commission's finding on this point is as follows: "*The only use to be made* of said push card and punchboard devices and *the only manner in which they are used,* by the ultimate purchasers thereof, is in combination with other merchandise so as to enable said ultimate purchasers to sell or distribute said other merchandise by means of lot or chance as hereinabove described." (Emphasis supplied.)

Petitioners press upon us the contention that even if they did violate Section 5 of the Federal Trade Commission Act, the order issued by the Commission is too broad. They assert that the order should be modified so as to delete the words "and may be used." Petitioners are concerned that, should this order be affirmed without modification, even the dealer who sold paper to them might be subject to a cease and desist order of the Commission. There is, of course, no basis for petitioners' concern. The paper distributors who supply petitioners do not furnish a product specifically designed for the purpose of selling merchandise by gambling. The primary function of paper is hardly that of incorporation into lottery devices. But petitioners have fabricated from these raw materials a specialized product the primary function of which is the sale of goods by lottery.

In proceedings against manufacturers and distributors of candy by lottery methods, several courts have narrowed orders of the Commission in a fashion somewhat similar to that urged by petitioners. See Sweets Co. of America v. Federal Trade Comm., 2 Cir., 1940, 109 F.2d 296; Helen Ardelle, Inc., v. Federal Trade Comm., 9 Cir., 1939, 101 F.2d 718. Other courts have refused to modify orders of the Commission. Hill v. Federal Trade Comm., 5 Cir., 1941, 124 F.2d 104; Ostler Candy Co. v. Federal Trade Comm., 10 Cir., 1939, 106 F.2d 962, certiorari denied 309 U.S. 675, 60 S.Ct. 713, 84 L.Ed. 1020. A careful study of those cases reveals, however, that the only disagreement is one of semantics. The courts which modified the language of the Com-

448

mission were concerned lest the words "or may be used" would be construed to prevent manufacturers from selling candy which any person might thereafter sell by means of a lottery, even though such sale was not designed or intended by the manufacturers. We do not so interpret the order of the Commission. We construe it to prohibit only the distribution in interstate commerce of any push card, punchboard or other device which is designed to serve as an instrumentality for the sale of articles of merchandise by lottery methods.

The order of the Commission will be affirmed.