## LICHTENSTEIN et al. v. FEDERAL TRADE COMMISSION.

### No. 12666.

United States Court of Appeals
Ninth Circuit.

Feb. 5, 1952.

Rehearing Denied Feb. 27, 1952.

F. W. James, Evanston, Ill. (George E. Lindelof, Jr., Los Angeles, Cal., of counsel), for petitioner.

W. T. Kelley, Gen. Counsel, James W. Cassedy, Asst. Gen. Counsel and Jno. W. Carter, Jr., Atty, Federal Trade Commission, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

Petitioner, a dealer in gambling devices used to promote sales of merchandise, seeks a review and our setting aside of two orders of the Federal Trade Commission. One of the orders provides:

"It is further ordered that said respondents and their agents, representatives and employees, directly or through any corporate or other device, in connection with the offering for sale, sale or distribution in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of cigarette chests or boxes, or other articles of merchandise, do forthwith cease and desist from:

"1. Supplying to or placing in the hands of others punch boards, push cards, or other lottery devices, either with assortments of cigarette chests or boxes or other merchandise, or separately, which said punch boards, push cards, or other lottery devices, are to be used, or may be used, in selling or distributing such cigarette chests or boxes or other merchandise to the public.

"2. Selling or distributing cigarette chests or boxes, or other articles of merchandise, so packed or assembled that sales thereof to the public are to be made or, due to the manner in which such merchandise. is packed or assembled at the time it is sold by the respondents, may be made by means of a game of chance, gift enterprise, or lottery scheme.

"3. Selling or otherwise disposing of any merchandise by menas [means] of a game of chance, gift enterprise, or lottery scheme."

■ Since the gambling devices, the punchboards, were shipped with petitioner's merchandise to be sold to the ultimate consumer in a gambling sale, the order is clearly justified by Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814. This order of the Commission is affirmed.

The second order complained of reads as follows: It is ordered that respondents cease: "Selling or distributing in commerce, as 'commerce' is defined in the Federal Trade Commission Act, punch boards, push cards, or other lottery devices, which are to be used, *or may be used,* in the sale or distribution of merchandise to the public by means of a game of chance, gift enterprise, or lottery scheme." (Emphasis supplied.)

The Commission's brief here admits concerning the place in which the gambling sales are consummated to the ultimate consumer that: "It is true that the final sale to the ultimate purchaser by means of lottery of necessity, always occurs in intrastate commerce and is an intrastate transaction. The punching of the board or pushing of the card always occurs within the borders of some state."

The petitioner contends that since the gambling devices are not used in competitive sales in the course of their interstate transmission but only in competitive sales transactions in intrastate commerce after the interstate transmission is completed, no authority is given to the Commission to regulate such interstate transportation by Section 5(a) of the Federal Trade Commission Act providing:

"Sec. 5.    (a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

"The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 52 Stat. 111–112; 15 U.S.C.A. § 45(a).

Upon a review of the history of Section 5(a) in connection with the decisions of the court thereon, we are of the opinion that the petitioner's use of interstate commerce to ship these devices to be used in intrastate commerce in the gambling disposition of merchandise to the ultimate consumer is one of the "unfair * * * practices in commerce" subject to the preventive control of the Commission.

Prior to its amendment in 1938 the first sentence of Section 5(a) read: "Sec. 5. That unfair methods of competition in commerce are hereby declared unlawful."

The addition of the words, "unfair or deceptive acts or practices in commerce," was the subject of discussion in the Congress and in the report[1] of the Conference Committee on the bill containing the additional words.

Prior to the introduction of the bill for amending Section 5(a), the Supreme Court had held in the case of Federal Trade Commission v. Raladam Co., 283 U.S. 643, at page 646, 51 S.Ct. 587, at page 589, 75 L. Ed. 1324: "By the plain words of the act, the power of the Commission to take steps looking to the issue of an order to desist depends upon the existence of three distinct prerequisites: (1) That the methods complained of are *unfair;* (2) that they are methods of *competition* in commerce; and (3) that a proceeding by the Commission to prevent the use of the methods appears to be in the *interest of the public.* We assume the existence of the first and third of these requisites; and pass at once to the consideration of the second."

It then proceeded to hold that the Commission had no power to issue an order to desist in that case because there was no competition in interstate commerce. In the discussions of the amendment to Section 5(a) in the Congress, there was agreement both in the House, where the bill was introduced by Congressman Lea, and in the Conference Committee that its purpose was to relieve the Federal Trade Commission of the necessity of showing injury to a competitor and to protect the ultimate consumer where there was no competition.[2]

---

1. 83 Congressional Record 3252 (1938).

2. In the House, Congressman Lea who proposed the bill adding the above quoted words stated at 83 Cong.Rec. 391–92 (1938):
   "The act as originally passed makes competition a necessary element to be established in order to proceed. It is not sufficient to show only an unfair practice. It must also be shown that this unfair practice is injurious to a competitor. One thing we propose in the pending bill in this respect is that it is sufficient

to establish the unfair practice without showing injury to a competitor in order to give the Commission jurisdiction.
   "If this bill becomes law, one of the things it will do is to relieve the Federal Trade Commission of the necessity of showing injury to a competitor. That is one of the practical purposes of the legislation. This will save unnecessary time and expense in showing that an act is injurious to a competitor. Indeed, the principle of the act is carried further to protect the consumer as well as the

In the earlier case of Federal Trade Commission v. R. F. Keppel & Bro., supra, 291 U.S. at page 310, et seq., 54 S.Ct. at page 425, the Supreme Court makes a similar review of the discussion in the Congress in determining the purpose of the enactment of Section 5(a) as originally drawn.

■ The object of the Federal Trade Commission Act is to reach not merely in their fruition but also in their incipiency trade practices deemed undesirable by the Congress. Cf. Fashion Originators' Guild v. Federal Trade Commission, 312 U.S. 457, 466, 668, 61 S.Ct. 703, 85 L.Ed. 949, and Federal Trade Commission v. Raladam Co., 316 U.S. 149, 152, 62 S.Ct. 966, 86 L. Ed. 1336.

The recent Third Circuit case of Globe Cardboard Novelty Co. v. Federal Trade Commission, 192 F.2d 444, and the Sixth Circuit case of Charles A. Brewer & Sons v. Federal Trade Commission, 158 F.2d 74, both hold that the Federal Trade Commission has the power to prevent the shipment in interstate commerce of gambling devices to be used in intrastate sales. We agree with their reasoning, which is further supported by our above consideration of the legislative history of Section 5(a).

The Brewer case came under the consideration of Congress in the course of the enactment of Public Law 906, 81st Cong., 2d Sess., approved January 2, 1951, 15

U.S.C.A. § 1172, forbidding the transportation of slot machines suitable for gambling in interstate commerce. Section 2 of the Act provides, however, that shipments may be made to any state which has enacted a law exempting that state from the provisions of the Act. Section 2 of the Act then provides: "Nothing in this Act shall be construed to interfere with or reduce the authority or existing interpretations of the authority, of the Federal Trade Commission under the Federal Trade Commission Act as amended (15 U.S.C.A. §§ 41–58)."

In explanation of this Section 2, Senate Report No. 1482, 81st Cong., 2d Sess., page 4, cites the Brewer case in connection with the following language: "A saving clause is included in this section to avoid any misunderstanding that the Act, and particularly the proviso in Section 2 permitting unbroken transportation of gambling devices into States where their use is legal, interferes with or reduces the authority which the Federal Trade Commission has exerted under Section 5 of its constituent Act (15 U.S.C. 45) to exclude from the channels of interstate commerce devices to be used in the sale or distribution of merchandise to the public, Federal Trade Commission v. R. F. Keppel & Bro., Inc., 291 U.S. 304 [54 S.Ct. 423, 78 L.Ed. 814]; Charles A. Brewer & Sons v. Federal Trade Commission [6 Cir.], 158 F.2d 74."[3]

competitor. In practice the main feature will be to relieve the Commission of this burden, but we go further and afford a protection to the consumers of the country that they have not heretofore enjoyed."

Lea was a senior House member of the Conference Committee on the bill. In the discussion in the Senate, Senator Wheeler, a senior member of the Conference Committee, referring to the action of the Supreme Court in the Raladam case, supra, stated at 83 Cong.Rec. 3255 (1938): "Section 5 of the present act is amended, first, by making unlawful 'unfair or deceptive acts or practices in commerce'. The present act makes unlawful 'unfair methods of competition,' and the Supreme Court has held that the Commission loses jurisdiction of a case where an actual or potential competitor is not involved. This amendment makes the consumer who may be injured by an un-

fair trade practice of equal concern before the law with the merchant injured by the unfair methods of a dishonest competitor."

3. The report of the House Committee on Interstate and Foreign Commerce on the same Bill (S. 3357) makes this policy equally certain: "Section 2 further provides that nothing in this Act shall be construed to interfere with or reduce the authority of the Federal Trade Commission under the Federal Trade Commission Act as amended. It is the purpose of this provision to leave unaffected the powers of the Federal Trade Commission with respect to the use of lotteries, games of chance, or other gambling devices for the purpose of merchandising. Such use has been held to be an unfair trade practice in violation of the Federal Trade Commission Act as amended [Report No. 2769, 81st Cong. 2d Sess. pp. 9–10]."

Nothing in the criminal proceeding of United States v. Halseth, U.S., 72 S.Ct. 275, questions this saving clause respecting such power of the Commission as was exercised in the civil case of Charles A. Brewer & Sons v. Federal Trade Commission. Nowhere has the Commission claimed the power to prohibit the transmission of such lottery devices in interstate commerce as such. The cases construing similar cease and desist orders have all concerned the use of lotteries in merchandising. Globe Cardboard Novelty Co. v. Federal Trade Commission, 3 Cir., 192 F.2d 444 is similarly limited and should not be construed as conferring a general power over lotteries as such. The case of Scientific Mfg. Co. v. Federal Trade Commission, 3 Cir., 124 F.2d 640, made it clear that trade practices were the sole concern of the Commission.

 Petitioner further urges that the prevention of the use of its gambling devices in the sale of merchandise to the ultimate consumer is not in the public interest. We find no merit in this contention. The language of the Supreme Court in Phalen v. Virginia, 1850, 8 How. 163, 49 U.S. 163, 12 L.Ed. 1030, as to the "pestilence" of lotteries which "enters every dwelling * * * reaches every class * * * and preys upon" and "plunders the ignorant and simple" applies with force many times multiplied to the spread of lottery methods into line after line of merchandise.

 Petitioner further contends that if we hold the Commission's *second* order to be valid, the phrase, "or may be used," should be stricken from it. We agree. The issue upon which the Commission considered the case against the petitioner was confined by the amended complaint to push cards and punch board devices the "only"

use to be made of which was to enable the ultimate purchasers to sell or distribute other merchandise.[4]

On this allegation the board's finding distinguishes the punch board and push card devices which are only used by the ultimate purchaser in effecting the sale of other merchandise from so-called money boards used solely for gambling.[5] We are not here confronted with a case where the petitioners were called upon to meet a tendered issue of punch board and push card devices which "may be used" in the sale of merchandise. Cf. Hamilton Mfg. Co. v. Federal Trade Commission, D.C.Cir., 194 F.2d 346; Lee Boyer's Candy v. Federal Trade Commission, 9 Cir., 128 F.2d 261 and cases there cited.

The board's order second above considered is amended by striking out the words "or may be used" and as so amended is affirmed.

---

4. The allegation is: "The only use to be made of said push card and punchboard devices, and the only manner in which they are used, by the ultimate purchasers thereof, is in combination with other merchandise so as to enable said ultimate purchasers to sell or distribute said other merchandise by means of lot or chance as hereinabove alleged."

5. The finding is: "Except in the case of so-called money boards used solely for gambling, the only use to be made of said punch board and push card devices and the only manner in which they are used by the ultimate purchaser thereof is in combination with other merchandise so as to enable said ultimate purchaser to sell or distribute the other merchandise by means of lot or chance.