## FEITLER et al. v. FEDERAL TRADE COMMISSION.

No. 13011.

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1953.

Rehearing Denied Feb. 19, 1953.

W. T. Kelley, Gen. Coun., Robert B., Dawkins, Asst. Gen Coun. and Jno. W. Carter, Jr., Atty., FTC., Washington, D. C., for respondent.

Before HEALY, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

This is a petition to review a cease and desist order entered against petitioners by the Federal Trade Commission. The order was entered after a hearing on a complaint charging in substance that petitioners (respondents below) manufacture, sell and distribute in interstate commerce devices known as push cards and punch boards to manufacturers of and dealers in other articles of merchandise; that these push cards and punch boards are prepared so as to involve games of chance or lottery schemes when used in making sales of merchandise to the consuming public; that many members of the purchasing public have been induced to trade or deal with retail dealers selling or distributing merchandise by means of these lottery devices; that substantial trade has been thereby unfairly diverted from competitors selling similar merchandise who do not use these devices; and that the acts and practices of petitioners are all to the prejudice and injury of the public and constitute unfair acts and practices within the intent and meaning of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq.

The Commission made findings and conclusions sustaining all of the substantial allegations of the complaint and ordered petitioners to cease and desist from:

"Selling or distributing in commerce, as 'commerce' is defined in the Federal Trade Commission Act, push cards, punch boards, or other lottery devices, which are to be used or may be used in the sale or distribution of merchandise to the public by means of a game of chance, gift enterprise or lottery scheme."

Petitioners' principal contentions are (1) that the Commission does not have jurisdiction to restrain the interstate shipment of push cards and punch boards; and (2)

F. W. James, Evanston, Ill. (George E. Lindelof, Jr., Los Angeles, Cal., of counsel), for petitioner.

that the hearing granted petitioners did not comply with the due process clause of the Constitution nor with the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. The two questions raised are related and we believe that the answer to the first will also dispose of the second.

■■ It is no longer open to question that the Federal Trade Commission has jurisdiction to restrain interstate shipment of gambling devices to be used in intrastate sales of merchandise. Sec. 5(a) of the Federal Trade Commission Act provides:

"Sec. 5. (a) * * * The Commission is empowered and directed to prevent persons, partnerships, or corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 15 U.S.C.A. § 45(a).

Recently this court examined the legislative history of that provision in a case similar to this and concluded:

"Upon a review of the history of Section 5(a) in connection with the decisions of the court thereon, we are of the opinion that the petitioner's use of interstate commerce to ship these devices to be used in intrastate commerce in the gambling disposition of merchandise to the ultimate consumer is one of the 'unfair * * * practices in commerce' subject to the preventive control of the Commission." Lichtenstein v. Federal Trade Commission, 9 Cir., 194 F.2d 607, 609; see also Bork Mfg. Co. v. Federal Trade Commission, 9 Cir., 194 F.2d 611.

The question has been examined in several other circuits and all are in accord with the conclusion stated in the Lichtenstein case.[1] Nothing to the contrary can be found in Federal Trade Commission v. Bunte Bros., Inc., 312 U.S. 349, 61 S.Ct.

580, 85 L.Ed. 881, where it was merely held that the jurisdiction of the Commission does not extend to purely intrastate transactions. Cf. Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 313, 54 S.Ct. 423, 78 L.Ed. 814.

The contention of petitioners that they were denied a fair hear: g is predicated upon certain rulings of the trial examiner striking evidence and refusing to hold hearings at various cities for the taking of testimony sought to be introduced by petitioners. The only portions of the printed record before us which bear on the question of the fairness of the hearing are the motion of petitioners before the Commission to set aside its cease and desist order and the order of the Commission denying the motion. The exact circumstances under which the challenged rulings of the trial examiner were made do not appear. However, the petitioners' contentions are clear enough, and even accepting their own view of these rulings, we are of the opinion that petitioners were not prejudiced thereby.

In the motion to set aside the cease and desist order there are set out a number of proposed stipulations of testimony, which apparently were not signed by counsel supporting the complaint. It is the contention of petitioners that the trial examiner erred in striking evidence tending to prove the matters set out in the proposed stipulations and in refusing requests for hearings at several cities to take testimony as to such matters.

The evidence sought to be introduced by petitioners consisted substantially of the following: (1) The persons who patronize punch boards do so only to satiate an appetite for gambling, and not to procure merchandise; (2) people who desire to buy merchandise do not resort to punch boards for this purpose; (3) punch boards are operated only in such establishments as taverns, pool halls and other places where

1. Consolidated Manufacturing Co. v. Federal Trade Commission, 4 Cir., 199 F.2d 417; Zitserman v. Federal Trade Commission, 8 Cir., 200 F.2d 519; Hamilton Manufacturing Co. v. Federal Trade Commission, 90 U.S.App.D.C. 169, 194 F.2d 346; Globe Cardboard Novelty Co. v. Federal Trade Commission, 3 Cir., 192 F.2d 444; Chas. A. Brewer & Sons v. Federal Trade Commission, 6 Cir., 158 F.2d 74; Modernistic Candies, Inc., v. Federal Trade Commission, 7 Cir., 145 F.2d 454.

people are encouraged to loiter, and not in strictly retail stores; (4) distribution of merchandise by punch board does not divert any sales from the ordinary channels of trade; (5) the merchandise distributed by means of punch boards consist largely of novelty items, candy and tobacco; (6) punch boards are not sales aids or sales stimulators.

Petitioners contend that this evidence, if admitted, would have destroyed the factual basis upon which the jurisdiction of the Commission in this case rests. The argument is that gambling by punch board is no more opposed to the public policy of the United States than are other forms of gambling. Since the Commission does not have authority to stop interstate shipment of other gambling devices, such as dice, roulette wheels, etc., it is urged that the Commission's power in this case must rest upon the fact that the use of punch boards in the distribution of merchandise has some effect upon trade or commerce which is different from, or greater than, the effects of other forms of gambling which involve only the exchange of money. Petitioners sought to prove that the operation of punch boards has no such effect, that such operation does not compete with other forms of merchandising, and that therefore the interstate shipment of these devices, like the shipment of other gambling devices, is outside the orbit of the Commission.

 We agree that the Commission's authority does not extend to the interstate shipment of gambling devices as such, but only to such shipments as amount to unfair trade practices. Lichtenstein v. Federal Trade Commission, supra. But the jurisdiction of the Commission in this case does not depend upon any particular effect of the operation of punch boards and push cards upon merchandising competition, but upon the single fact that these devices, unlike most other gambling devices, are used as a *means of selling or distributing merchandise* which is opposed to the public policy of the United States. This was made abundantly plain in the Lichtenstein case, supra. It is the fact that the interstate shipment of these devices facilitates *a kind*

*of merchandising* which induces and encourages the public to gamble which makes such shipment an "unfair trade practice." Proof that the use of punch boards in the gambling disposition of merchandise has no effect upon trade in the same kinds of merchandise by other means could not have affected the question of the Commission's jurisdiction.

Petitioners, as we understand their argument, do not contend that the proof rejected by the trial examiner was offered for any purpose other than to show that the Commission did not have jurisdiction over the practice here in question. Indeed, we cannot see how such proof could have aided petitioners' case on the merits. The offered evidence, if admitted, would have been strongly probative of the gambling use of push cards and punch boards in the distribution of merchandise—the very circumstance which brands the shipment of these devices in interstate commerce an *unfair* act or practice. Petitioners were not prejudiced by the challenged rulings of the trial examiner.

The only finding of the Commission which is directly challenged is the finding that "the only use to be made of [petitioners' push cards and punch boards] and the only manner in which they are used by the ultimate purchaser thereof is in combination with other merchandise so as to enable said ultimate purchaser to sell or distribute the other merchandise by means of lot or chance." There was some evidence at the hearing that petitioners' devices may be used as a kind of question and answer game. The slips of paper punched from the punch boards have, in addition to a number, a question printed upon them. The numbers on these tabs are keyed to an answer book. One who buys a punch may be obliged to answer the question before receiving a prize. There was also evidence that a gummed paper reproduction of a checkerboard may be pasted on the punch boards. If this feature is used, the tabs punched from the board are keyed to checker problems posed on the checkerboard which must be solved by the patron. Petitioners cited several state court decisions holding that

punch boards when used with this question and answer feature were not gambling devices.

However, there is no evidence in the record that any punch board furnished by petitioners was ever actually used as a question and answer game. The witness Groves testified as to the manner of operation of a punch board with this feature but admitted that she had never seen one in actual use. James, a witness for petitioners, testified that he was engaged in introducing and testing the legality of the question and answer game throughout the United States on behalf of four or five punch board manufacturers. He testified that all of the merchandise punch boards distributed by petitioners had questions printed on the tabs which are punched from the boards. However, he did not know anything about the number of answer books which petitioners distributed with their boards. He testified that none of the boards had legends upon them instructing the operators how to operate the question and answer game. Neither did he know the extent of the use of the checkerboard idea in connection with petitioners' boards. He testified that prior to 1938 he made very little progress in developing a market for the games because they were covered by an outstanding patent, and it was stipulated by the parties that "the acts and practices of [petitioners] * * * and their methods of doing business in connection with the sale and distribution of * * * merchandise have remained the same from 1929 to the date of the issuance of the complaint herein."

■ The witnesses for respondent testified that the push cards and punch boards of petitioners were used as games of chance. The finding of the Commission is clearly sustained by the evidence.

■ Petitioners also contend that the Commission erred in not adopting their pro-

posed findings of fact. This is nothing more than an oblique attack on the Commission's findings. Since the only evidence in the record before us pertains to the finding above discussed, the other findings of the Commission are not properly before this Court for review.

Petitioners raise several questions as to the power of the Commission to make the order here in question, but these questions were fully answered in the Lichtenstein case, supra.

■ Finally, petitioners contend that the order is too broad. In the Bork and Lichtenstein cases, supra, orders similar to the one now before us were modified by ordering the words "or may be used" stricken therefrom. However, the breadth of the order, like the injunction of a court, must depend upon the circumstances of each case, the purpose being to prevent violations of the Act, the threat of which is indicated by past conduct of the petitioners. National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 436–437, 61 S. Ct. 693, 85 L.Ed. 930. There was evidence that all of the merchandise punch boards of petitioners have the question feature on their tabs, though apparently this feature is not used in the actual operation of the boards. If the use of the boards as question and answer games would not be gambling, the deletion of the words "or may be used" from the order would considerably embarrass its enforcement, since it would always be open to petitioners to assert that the boards could be operated so as not to involve games of chance, even though the question feature is a mere subterfuge. We believe the evidence here warrants affirmance of the order as issued.[2]

The orders of the Commission are affirmed. An order will be entered by this Court enforcing them in accordance with the provisions of 15 U.S.C.A. § 45.

2. In the two very recent cases of Consolidated Manufacturing Co. v. Federal Trade Commission and Zitserman v. Federal Trade Commission, supra, note 1, orders virtually identical to the one now before us were affirmed without modification.