## GAY GAMES, Inc. et al. v. FEDERAL TRADE COMMISSION.

### No. 4539.

United States Court of Appeals Tenth Circuit.

April 14, 1953.

Rehearing Denied May 11, 1953.

F. W. James, Evanston, Ill., for petitioners.

John W. Carter, Jr., Atty., Federal Trade Commission, Washington, D. C. (W. T. Kelley, General Counsel, and Robert B. Dawkins, Asst. General Counsel, Federal Trade Commission, Washington, D. C., on the brief) for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

This matter is here upon petition to review and set aside a cease and desist order issued by the Federal Trade Commission.

The Commission issued its complaint in which it charged that Noel's Gay Games, Inc., a corporation,[1] and Guy E. Noel, individually and as an officer of Games, Inc., were engaging in unfair or deceptive acts or practices in commerce in violation of 15 U.S.C.A. § 45(a).

In the complaint the following facts were specifically alleged:

Games, Inc. is an Ohio corporation with its office and principal place of business at Muncie, Indiana; Noel is president and treasurer of Games, Inc.; Games, Inc. is owned, dominated, controlled and directed by Noel; and Games, Inc. and Noel have cooperated and acted together in the carrying out of such alleged unlawful acts and practices.

At the time of the filing of the complaint Games, Inc. and Noel were engaged, and for more than three years immediately prior thereto had been engaged, in the manufacture of devices commonly known as push cards and punch boards and in the sale and distribution of such devices to manufacturers of various articles of merchandise, who sell such merchandise in commerce between and among the various states of the United States and in the District of Columbia, and to dealers in various articles of merchandise in the various states of the United States and the District of Columbia. They cause such devices so sold to be transported from the State of Indiana to the purchasers thereof in states of the United States, other than Indiana, and the District of Columbia, constituting a course of trade in such devices.

Such devices so sold and distributed to such manufacturers of and dealers in merchandise, involved games of chance, gift enterprises, or lottery schemes when used in making sales of merchandise to the consuming public. Games, Inc. and Noel cause to be printed on the faces of some of such devices instructions that explain the manner in which such devices are to be used or may be used in the sale or distribution of various specified articles of merchandise.

The price of the sales on such devices varies in accordance with the individual device. For the indicated price a purchaser is entitled to one punch or push from the device. When a push or punch is made, a disc or printed slip is separated from the device and a number is disclosed. The numbers are effectively concealed from prospective purchasers and from purchasers until a selection has been made and the push or punch completed. Certain specified numbers entitle purchasers to designated articles of merchandise. Persons securing winning numbers receive articles of merchandise without additional cost, so that the prices they pay are much less than the normal retail prices of such articles. Persons who do not secure winning numbers receive nothing for their money, other than the privilege of making a push or punch from the device. Articles of merchandise are thus distributed to the consuming or purchasing public wholly by lot or chance.

Other such devices have no instructions thereon, but have blank spaces provided therefor wherein the purchasers thereof place instructions, which have the same import as the above-mentioned instructions.

The only use to be made of such devices and the only manner in which they are used by the ultimate purchasers thereof is in combination with other merchandise, thus enabling the ultimate purchaser to sell or distribute merchandise by means of lot or chance.

Many persons, firms and corporations, who sell and distribute articles of merchandise in commerce between and among the various states of the United States and in the District of Columbia, purchase such devices and pack and assemble them with assortments of various articles of merchandise. Retail dealers, who have purchased

1. Hereinafter referred to as Games, Inc.

such assortments, either directly or indirectly, expose the same to the purchasing public and sell or distribute articles of merchandise by means of such devices. Because of the element of chance involved in connection with the sale and distribution of such merchandise by means of such devices, many members of the purchasing public have been induced to trade or deal with retail dealers selling or distributing such merchandise by means thereof and many retail dealers have been induced to deal with or trade with manufacturers, wholesale dealers and jobbers who sell and distribute such merchandise, together with such devices.

Games, Inc. and Noel filed an answer in which they denied the allegations of the complaint. A hearing was held before an examiner designated by the Commission. Thereafter, Games, Inc. and Noel withdrew their original answer and filed a substituted answer in which they admitted all the material allegations of the complaint, and consented that the matter be determined by the Commission on the complaint and answer.

Thereafter, the Commission found the facts as alleged in the complaint and admitted by the answer and concluded that the practices of Games, Inc. and Noel "are all to the prejudice and injury of the public and constitute unfair acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act" and entered its order directing Games, Inc. and Noel to cease and desist from:

"Selling or distributing in commerce, as 'commerce' is defined in the Federal Trade Commission Act, push cards, punchboards, or other lottery devices which are to be used or which, due to their design, are suitable for use in the sale or distribution of merchandise to the public by means of a game of chance, gift enterprise, or lottery scheme."

Two propositions of law which control the disposition of this case are now well established by the adjudicated cases. They are: (1) The practice of selling goods by means which involve a game of chance, gift enterprise, prize or lottery is contrary to the established public policy of the United States;[2] and (2) Persons who sell and distribute, in interstate commerce, devices designed for the purpose of selling merchandise by games of chance or lottery, and thereby aid, abet and induce manufacturers and wholesale and retail dealers in merchandise to use either unfair or deceptive acts or practices or unfair methods of competition, are engaged in practices contrary to the public policy of the United States and violative of the Federal Trade Commission Act.[3]

The devices here involved were designed for the specific purpose of selling merchandise by game of chance or lottery. The acts and practices of Games, Inc. and Noel aid, abet and induce manufacturers and wholesalers to distribute merchandise packed and assembled with such devices and aid, abet and induce retail dealers to engage in the sale of merchandise by game of chance or lottery and thus aid, abet and induce unfair and deceptive acts and practices and unfair methods of competition, adversely affecting interstate commerce and commerce in the District of Columbia.

We conclude that the acts and practices of Games, Inc. and Noel are violative of the Federal Trade Commission Act and

2. Federal Trade Commission v. R. F. Keppel & Bro., Inc., 291 U.S. 304, 313, 54 S. Ct. 423, 78 L.Ed. 814; Zitserman v. Federal Trade Commission, 8 Cir., 200 F.2d 519, 522; Globe Cardboard Novelty Co. v. Federal Trade Commission, 3 Cir., 192 F.2d 444, 446; Modernistic Candies v. Federal Trade Commission, 7 Cir., 145 F.2d 454, 455. See also: Maltz v. Sax, 7 Cir., 134 F.2d 2, 4.

3. Chas. A. Brewer & Sons v. Federal Trade Commission, 6 Cir., 158 F.2d 74, 77–79; Zitserman v. Federal Trade Commission, 8 Cir., 200 F.2d 519, 522, 523; Consolidated Mfg. Co. v. Federal Trade Commission, 4 Cir., 199 F.2d 417, 418; Globe Cardboard Novelty Co. v. Federal Trade Commission, 3 Cir., 192 F.2d 444, 446, 447; Modernistic Candies v. Federal Trade Commission, 7 Cir., 145 F.2d 454, 455; Lichtenstein v. Federal Trade Commission, 9 Cir., 194 F.2d 607, 609, 610; Feitler v. Federal Trade Commission, 9 Cir., 201 F.2d 790.

**200**

within the power of the Commission to prohibit.

Games, Inc. and Noel assert that the order is broader than the complaint and urged modification thereof. A like contention with respect to similar orders has been considered by a number of the courts. See: Consolidated Mfg. Co. v. Federal Trade Commission, 4 Cir., 199 F.2d 417, 418; Globe Cardboard Novelty Co. v. Federal Trade Commission, 3 Cir., 192 F.2d 444, 447, and cases there cited.

 We construe the order to prohibit only the distribution, in interstate commerce, of any punch card, punch board or other device which is designed to serve as an instrumentality for the sale of articles of merchandise by lottery methods. So construed, the order is freed from objection.

The order of the Commission is affirmed and judgment will be entered by this court enforcing it in accordance with the provisions of 15 U.S.C.A. § 45(c).

Bratton, Circuit Judge, dissented.