R. B. JAMES and Patrick Zurla, Individuals and Co-partners, Trading as Chicago Board Company, Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 12106.

United States Court of Appeals Seventh Circuit.

Feb. 7, 1958.

Rehearing Denied March 31, 1958.

Marvin H. Ruttenberg, Chicago, Ill., Frank W. James, Glenview, Ill., for petitioner.

Earl W. Kintner, Gen. Counsel, John W. Carter, Jr., Federal Trade Commission, Washington, D. C. (James E. Corkey, Asst. Gen. Counsel, E. K. Elkins, Washington, D. C., on the brief), for Federal Trade Commission.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Section 5(a) (1) of the Federal Trade Commission Act in relevant part[1] pro-

vides: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are [hereby] declared unlawful." The co-partner petitioners have brought here for review a cease and desist order[2] issued against them by the Commission acting under § 5(a) (1) based upon undisputed facts showing the following. For two years these petitioners engaged in the sale and distribution in commerce, within the statutory meaning of that word, of pushcards and punchboards, for use by retail dealers when selling merchandise to the public. These pushcards and punchboards are designed and arranged for use in games of chance, gift enterprises or lottery schemes by retailers when selling and distributing merchandise to the buying public. Petitioners' sales in 1954 and 1955 amounted to roughly $500,000 annually, and their pushcards and punchboards are transported from their Illinois place of business to purchasers in various parts of the United States and the District of Columbia. Other significant factual aspects of this situation are adequately summarized in the Commission's opinion:

"Some of said pushcards and punchboards have printed on the faces thereof, legends or instructions which explain the manner in which said devices are to be used in the sale or distribution of various specified articles of merchandise. Others have blank spaces where the user may place his own legends or instructions. The prices of the sales on the pushcards and punchboards vary with the individual device. Upon payment of the amount specified, each purchaser is entitled to one punch or push from the punchboard or pushcard, and when a punch or push is made, a disc or printed slip is separated from the device and a

---

1. 66 Stat. 632; 15 U.S.C.A. § 45(a) (1952 ed.).

2. Petitioners are restrained from "Selling or distributing in commerce, as 'commerce' is defined in the Federal Trade Commission Act, pushcards, punchboards, or other devices which are designed or intended to be and in the sale or distribution of merchandise to the public by means of a game of chance, gift enterprise or lottery scheme."

number is disclosed. The number is effectively concealed from the purchaser or prospective purchaser until a selection has been made and the push or punch completed. Certain specified numbers entitle purchasers to designated articles of merchandise, and purchasers securing lucky or winning numbers receive articles of merchandise without additional cost at prices which are much less than the normal retail price of said articles of merchandise. Purchasers who do not secure such lucky or winning numbers receive nothing for their money other than the privilege of making a push or punch from said card or board. The articles of merchandise are thus distributed to the public wholly by lot or chance. Some of these devices may be, and sometimes have been, used to distribute cash prizes, but the primary and usual use is for the sale and distribution of merchandise.

"Many persons, firms and corporations who sell and distribute, and have sold and distributed, candy, cigarettes, clocks, razors, golf equipment, cosmetics, clothing, and other articles of merchandise in commerce between and among the various states of the United States and in the District of Columbia, purchase and have purchased respondents' pushcard and punchboard devices, and pack and assemble, and have packed and assembled, assortments consisting of various articles of merchandise together with said pushcard and punchboard devices, and have sold said assortments to retail dealers and others for resale to the public. Respondents thus supply to and place in the hands of retail deal-

ers and others, through the channels of interstate commerce, the means of conducting lotteries or games of chance in the sale and distribution of merchandise to the general public."

Overlooking, when not denying, Congressionally authorized Commission functions and aims, these petitioners, in substance, claim an unrestricted right to use interstate commerce channels for flooding the states with punchboards. Because petitioners themselves do not participate in the ultimate sales of punches over store counters to individual consumers within a state, petitioners ask for immunization from § 5(a) (1). To describe their position posits the refutation of it. Federal Trade Commission v. Winsted Hosiery Co., 1922, 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729.

The parties' stipulations entered of record during Commission hearings on the complaint sufficiently supports the findings made by the Agency. Federal Trade Commission v. Bunte Bros., Inc., 1941, 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881 and United States v. Halseth,[3] 1952, 342 U.S. 277, 72 S.Ct. 275, 96 L.Ed. 308 are the two chief, and inapposite, opinions forming the core of petitioners' brief. We agree with views of Chief Judge Gardner reported in Zitserman v. Federal Trade Commission, 8 Cir., 1952, 200 F.2d 519, 523. See also the opinion of Chief Judge Phillips reported as Gay Games, Inc., v. Federal Trade Commission, 10 Cir., 1953, 204 F.2d 197 and Feitler v. Federal Trade Commission, 9 Cir., 1953, 201 F.2d 790. The last three cited cases involve punchboards and the tenuous questions under review in this appeal. There will be no conflict between those three circuits and ours in this matter.

3. An order entered by a panel of judges of our court September 15, 1954 affirmed the Commission's order in Perry Halseth v. Federal Trade Commission, No. 11022. There, petitioner's brief cited and heavily relied on United States v. Halseth, 1952, 342 U.S. 277, 72 S.Ct. 275, 96 L.Ed. 308. For some reason petitioners, in our court, persistently insist that the Supreme Court's decision under 18 U.S.C. § 1301 has bearing on a Federal Trade Commission proceeding. Obviously such reliance, by petitioners on review, is misplaced. See e. g. Lichtenstein v. Federal Trade Commission, 9 Cir., 1952, 194 F.2d 607, 611.

The cease and desist order of the Commission is affirmed and judgment entered by this court enforcing it in accordance with the provisions of 15 U.S.C.A. § 45 (c).