332 F.2d 985
 DANDY PRODUCTS, INC., a corporation, and Joseph M. Gron,
individually and as an officer of said corporation, and
Joseph M. Gron and Carlo E. Ferrari, copartners trading and
doing business as Capitol Mailers, Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 14320.
 United States Court of Appeals Seventh Circuit.
 June 11, 1964, Rehearing Denied July 7, 1964.
 
 Charles H. Rowan, Willis Hagen, Milwaukee, Wis., for petitioner.
 J. B. Truly, Asst. Gen. Counsel, W. Risque Harper, Atty., Federal Trade Commission, Washington, D.C., James McI. Henderson, Gen. Counsel, for the Federal Trade Commission.
 Before DUFFY, CASTLE and KILEY, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 The question is whether the Federal Trade Commission's order that Dandy Products, Inc. and Joseph Gron, individually and as an officer of Dandy, cease and desist from using lottery devices or games of chance in sale or distribution of merchandise should be set aside because of a change in the 'moral' climate of the business community. We think the order should stand.
 
 
 2
 Petitioners' briefs do not challenge, as they could not successfully do, the finding that the punchboard device used was a lottery device, or game of chance. Federal Trade Commission v. R. F. Keppel & Bro., Inc., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814 (1934), Gerson v. Federal Trade Commission, 325 F.2d 93 (7th Cir. 1963), Wren Sales Co. v. Federal Trade Commission, 296 F.2d 456 (7th Cir. 1961), Peerless Products, Inc. v. Federal Trade Commission, 284 F.2d 825 (7th Cir. 1960), cert. denied, 365 U.S. 844, 81 S.Ct. 804, 5 L.Ed.2d 809 (1961), Goldberg v. Federal Trade Commission, 283 F.2d 299 (7th Cir. 1960), Surf Sales Co. v. Federal Trade Commission, 259 F.2d 744 (7th Cir. 1958), Modernistic Candies, Inc. v. Federal Trade Commission, 145 F.2d 454 (7th Cir. 1944).
 
 
 3
 But we are urged to turn away from Keppel because it was decided in 'an earlier and different day' and involved children's market. However, Modernistic Candies involved both children and adults, and Gerson involved adults. The Keppel case was decided in 1934, and this court followed it in Modernistic Candies in 1944, has continued to follow it in more recent Surf, Goldberg, and Peerless cases, and in the 1961 Wren Sales case. Petitioners argue that 'the moral tone of the business community in which (they) operate is substantially different' from that in Keppel's time, that criminal laws have developed which show a change in public policy with respect to gambling in general and punchboards in particular, and that the Commission erred in not taking evidence 'of moral standards in the present business community with respect to this type of merchandising.'
 
 
 4
 Without agreeing that morals are relative, as petitioners, argue, we have considered petitioners' arguments that there are many contests, involving prizes, used by major companies; that in some states gambling is permitted and in others punchboards are held not to be gambling equipment; that gambling is not immoral per se, and is involved in stock brokerage and other businesses; and that a gambling 'instinct' seems to be a weakness in human nature. All these arguments were addressed to the Commission below, and in one degree or another have been addressed to this court, without success, in Wren Sales, Peerless and Modernistic Candies.[1] We are not persuaded that this merchandising practice is less an 'unfair method of competition' today than it was in the time of Keppel.
 
 
 5
 The Commission was within the power granted to it, by Congress, in entering the order. See Lichtenstein v. Federal Trade Commission, 194 F.2d 607 (9th Cir. 1952), cert. denied, 344 U.S. 819, 73 S.Ct. 15, 97 L.Ed. 638. And the law is firmly established that the merchandising practice found here is against the established public policy of the United States. Peerless Products, Inc. v. Federal Trade Commission, 284 F.2d 825, 826 (7th Cir. 1960), cert. denied, 365 U.S. 844, 81 S.Ct. 804, 5 L.Ed.2d 809 (1961), Surf Sales Co. v. Federal Trade Commission, 259 F.2d 744, 746 (7th Cir. 1958). As Chief Judge Hastings said in Peerless,
 
 
 6
 'At the outset, we reaffirm that the 'law is now firmly established that the practice of selling goods by means which involve a game of chance, gift enterprise or lottery, including push cards such as we have here, is contrary to the established public policy of the United States and the sale and distribution, in interstate commerce, of such devices designed for the purpose of selling merchandise by games of chance or lottery is violative of the Federal Trade Commission Act."We see no merit in the claim that the order is erroneous because it failed to dismiss the partnership Capitol Mailers because the Commission found no evidence to warrant entering a cease and desist order against '* * * Gron and * * * Ferrari, copartners trading and doing business as Capitol Mailers * * *.' The partners as individuals were respondents and the Commission dismissed as to Ferrari. This was proper and sufficient. The Commission prudently noted that the order against Gron individually will apply to his activities as a partner in Capitol Mailers.
 
 
 7
 In view of the fact that the Commission's finding as to the nature of the device is unchallenged, and sufficient to support the cease and desist order entered by the Commission, we need not pass on the question of limitation of cross-examination of witnesses with respect to the use of the merchandising device.
 
 
 8
 The petition to set aside the Commission's order is denied.
 
 
 
 [1]
 The then Judge, later Supreme Court Justice, Minton disposed of a similar argument in Modernistic Candies:
 'Counsel for the petitioner discussed at great length from a sociological point of view, the age-old problem of the gambling instinct in the human being. According to his analysis, gambling pervades our entire economic system; thus insurance contracts are gambles, stock and grain exchange transactions are gambles, and the farmer's dependence on the weather is a gamble. Counsel's attempts to apply this analysis to the present case left us cold and unimpressed. He even reminded us that our great idol, Mr. Chief Justice Marshall in his day attended the horse races and wagered with his clergyman. In fact, they ran a book. As indicating how times have changed, and how even our coarse nature has yielded to the protecting care of governmental policy, we confess we do not even know a bookmaker, clerical or otherwise, and our passes to the beautiful race tracks around Chicago liein our desk unused.' 145 F.2d at 454-55.