Nate GELLMAN, Burt Horwitz and Peter Podany, individually and as co-partners doing business as Gellman Brothers, Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 16555.

United States Court of Appeals Eighth Circuit.

May 26, 1961.

———◆———

Maurice Weinstein, Milwaukee, Wis., for petitioners.

Alvin L. Berman, Atty., Federal Trade Commission, Washington, D. C., for respondent. PGad B. Morehouse, Acting Gen. Counsel, and Alan B. Hobbes, Asst. Gen. Counsel, Federal Trade Commission, Washington, D. C., on the brief for respondent.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

VOGEL, Circuit Judge.

On May 23, 1960, the Federal Trade Commission, respondent herein, adopted

as its decision an order dated December 23, 1959, issued by its Hearing Examiner, directing that the petitioners, individually and as a partnership trading under the name of Gellman Brothers,

"* * * do forthwith cease and desist from selling or distributing in commerce, as 'commerce' is defined in the Federal Trade Commission Act, punchboards or other devices which are designed or intended to be used in the sale or distribution of merchandise to the public by means of a game of chance, gift enterprise or lottery scheme."

Petitioners ask this court to review and reverse such order, which was issued at the conclusion of an administrative proceeding based upon a complaint charging the petitioners with having engaged in certain unfair acts and practices in commerce, in violation of the Federal Trade Commission Act. The pertinent provisions thereof are, 15 U.S.C.A. § 45(a) (1) and (6):

"(a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

* * * * * *

"(6) The Commission is empowered and directed to prevent persons, partnerships, or corporations * * from using * * * unfair or deceptive acts or practices in commerce."

At a hearing before one of the Commission's Examiners, evidence was introduced in support of the charges. Petitioners offered no evidence. Subsequently they, through their attorney, objected to proposed findings prepared by counsel for the Commission and filed their own proposed findings, which will hereafter be referred to. The Hearing Examiner

"Upon the basis of the entire record, and after considering the pro-

posed findings of facts, conclusions and legal memoranda submitted by counsel * * * "

made his findings of fact and conclusions and order thereon. The Examiner found, as alleged in the complaint, that the petitioners are now and have been engaged in the sale and distribution of merchandise including devices commonly known as punchboards; that they were sold in "commerce" as defined in the Federal Trade Commission Act; that the " * * * punchboards [were] so prepared and arranged as to involve games of chance, gift enterprises or lottery schemes when used in making sales of merchandise to the public"; and that the sale of merchandise by means of such punchboards is contrary to established public policy and accordingly constituted unfair acts and practices in violation of the Federal Trade Commission Act. The Examiner issued the proposed order which on appeal was adopted by the Commission.[1]

In asking this court to review and set aside the order, the petitioners' primary claim of error is that the evidence fails to support the findings of the Examiner.

We note at the outset that it is now well established that the sale or distribution in interstate commerce of punchboards or other devices designed for the purpose of selling merchandise to the public by means of a game of chance or lottery scheme constitutes "unfair or deceptive acts or practices" under § 45(a) of Title 15 U.S.C.A. Zitserman v. Federal Trade Commission, 8 Cir., 1952, 200 F.2d 519, 522; Gay Games, Inc. v. Federal Trade Commission, 10 Cir., 1953, 204 F.2d 197, 199, rehearing denied May 11, 1953; Surf Sales Company v. Federal Trade Commission, 7 Cir., 1958, 259 F.2d 744, 746; Goldberg v. Federal Trade Commission, 7 Cir., 1960, 283 F.2d 299; Feitler v. Federal Trade Commission, 9 Cir., 1953, 201 F.2d 790, 792, rehearing

1. For violating a similar cease and desist order issued in 1938, action was brought against petitioners for damages and injunctive relief. The suit was settled by stipulation in 1943 upon payment of $1500.00 damages. The stipulation for settlement provided that the plaintiff "has abandoned and wishes to have dismissed without prejudice its request for injunctive relief".

denied February 19, 1953, certiorari denied 346 U.S. 814, 74 S.Ct. 24, 98 L.Ed. 341, rehearing denied 346 U.S. 880, 74 S.Ct. 117, 98 L.Ed. 386. Cf. Loughran v. Federal Trade Commission, 8 Cir., 1944, 143 F.2d 431.

The most recent Court of Appeals case on the subject and one which appears, factually, to be on all fours with the instant situation is Peerless Products, Inc. v. Federal Trade Commission, 7 Cir., 1960, 284 F.2d 825, 826, rehearing denied December 29, 1960. Therein Peerless Products, Inc., shipped punchboards in interstate commerce.

" * * * Most of the boards were 'plain boards' which had no legend printed upon them designating the winning numbers and prizes. However, there was substantial testimony from petitioners' customers that they easily had adapted these plain boards for the distribution of merchandise by lottery and that the adapted boards were used primarily to distribute merchandise rather than cash prizes. In addition, there was testimony that in certain instances Peerless furnished its customers with 'flares' (legends describing prizes and winning numbers) which they could attach to plain boards in adapting them for the distribution of merchandise as prizes. * * *

By the sale and interstate shipment of its punchboards, petitioners have supplied and placed in the hands of third persons the means of and instrumentalities for engaging in unfair acts of distributing merchandise by lottery in violation of the Act. Since the evidence indicates that such punchboards were designed and used primarily for the distribution of merchandise by lottery, it is no defense that in the main third parties attached to the boards the legends of winning numbers and merchandise prizes or that such boards could possibly be adapted as money boards giving only cash prizes."

Here the record indicates the following: For approximately forty years petitioners have been engaged in the sale and distribution of various kinds of merchandise, including punchboards. They operate from Minneapolis, Minnesota. Petitioners' sales, including punchboards, for 1957 were in excess of $1,400,000 and approximately the same for 1958. Of this gross amount, approximately 50% represented sales outside the State of Minnesota. The exact volume of petitioners' punchboard business was not ascertainable since petitioners kept no separate record of punchboard sales, a subpoena duces tecum produced no records of punchboard purchases and a search therefor was fruitless. Punchboard items, however, were carried prominently displayed and described on two full pages in the petitioners' catalog. Of 40,000 catalogs published, 75% have been distributed outside of the State of Minnesota. Nate Gellman, one of the petitioners, while claiming that they kept no separate records with reference to the sale of punchboards, admitted that they sold "a lot of punchboards" in the State of Minnesota and that " * * * about 50 per cent of our business on punchboards would be outside the state of Minnesota". An examination of some of the petitioners' sales files by investigators for the Federal Trade Commission disclosed the names of a considerable number of out-of-state purchasers of punchboards. This list was given to Gellman. Gellman testified that he thereafter sent form letters to forty or fifty of such out-of-state purchasers of punchboards. Subsequently it was stipulated by petitioners that four of petitioners' out-of-state customers would have testified, if called as witnesses, (1) that each purchased one board from Gellman Brothers; (2) that each placed upon the board after receiving it a legend to the effect that the person who punched the board and received the lucky number would receive as a prize certain merchandise; (3) that each actually gave to the lucky winner the merchandise referred to as a prize; (4) that the merchandise so given as a prize had a value greater than

the amount paid for any individual punch.

As to two of the punchboards received as exhibits and as typical of those admittedly sold by the petitioners, each is described in the petitioners' catalog as a "merchandise board". The legend on the face of each board is:

"Numbers Ending in
0 and 5

Register For
Grand Prize
Numbers 1 to 15
Are Free
Numbers 16 to 35
Pay What You Draw
Over 35 Pay Only 35¢"

A third punchboard exhibit of the type sold by the petitioners carried on its face the legend:

"Getzum Smokes

| Red Tickets | White Tickets | Blue Tickets |
|---|---|---|
| 15-35-55-75 115-135 | 20-40-60-80- 100-120 | 22-44-66 |
| Receive | Receive | Receive |
| 5 Packs of Cigarettes | 5 Packs of Cigarettes | 5 Packs of Cigarettes |

Last Punch On Board Receives 5 Packs
of Cigarettes"

---

Significantly, petitioners in their proposed findings submitted to the Examiner made, in essence, the following statements: (1) That they are now and have been selling punchboard devices to dealers and individuals in the several states; (2) that such sales constitute trade in "commerce" as defined by the Federal Trade Commission Act; (3) that said punchboard devices are so prepared as to involve games of chance, gift enterprises or lottery schemes when used in selling merchandise to the public; and (4) that by using such punchboard devices, articles of merchandise are distributed to the public wholly by lottery or chance. As to whether these statements constitute pertinent judicial admissions as argued by the respondent, and denied by petitioners, we need not decide; suffice it to say that whether designated admissions or mere statements, their accuracy is clearly established by the record and lend support to respondent's conclusions.

Petitioners claim that there is no evidence that there were "many sales" made by means of the punchboards to "many members" of the purchasing public "which had been induced to trade or deal with retail dealers, organizations and individuals selling, distributing merchandise by the means of these particular punchboards". They contend that the evidence is limited to four sales. The argument hardly justifies reply, when consideration is given to the fact that petitioners' catalogs prominently display some 19 different types of punchboards, that they distribute 30,000 copies of their catalogs in interstate commerce, that they have been selling punchboards in interstate commerce for forty years, that they sell "a lot of punchboards" in Minnesota, and that 50% of their punchboard business is in interstate commerce; and that a partial investigation disclosed at least forty or fifty out-of-state purchasers of punchboards. The fact that the prosecution limited the stipulation to the testimony of four of petitioners' out-of-state customers is persuasive only of the conclusion that further testimony from other out-of-state customers would have been merely cumulative. Cf. Automatic Can-

teen Co. v. Federal Trade Commission, 1953, 346 U.S. 61, 65, 73 S.Ct. 1017, 97 L.Ed. 1454; Fox Film Corp. v. Federal Trade Commission, 2 Cir., 1924, 296 F. 353, 356; Rosten v. Federal Trade Commission, 2 Cir., 1959, 263 F.2d 620. Moreover, it would appear from the Senate Report on the Wheeler-Lea Amendment (S.Rep. No. 221, 75th Cong., 1st Sess., 3–4 (1937) ) amending Section 5 of the Federal Trade Commission Act, that the Commission's jurisdiction is not intended to be affected even if only a single unfair act is involved.

"* * * After consideration the committee is of the opinion that, since the powers of the Commission in this respect are injunctive rather than punitive, the Commission should have the power to restrain an unfair act before it had become a method or practice, if, in its discretion, such restraint be in the public interest. *A single act may have multiple or continuing effects and may be far reaching.*" (Emphasis supplied.)

■ Petitioners also profess lack of knowledge that the punchboards would be used for selling merchandise. What else could they have meant or intended when they advertised and sold punchboards as "merchandise board[s]" and "Getzum Smokes" punchboards designating certain numbers which when punched were to receive stated packs of cigarettes? To accept petitioners' profession of innocence would require more naivete than this court is willing to admit. Be that as it may, however, whether petitioners knew or did not know of the intended use to which the boards were to be put is without significance. In Jaffe v. Federal Trade Commission, 7 Cir., 1943, 139 F.2d 112, rehearing denied November 22, 1943, certiorari de-

nied 321 U.S. 791, 64 S.Ct. 790, 88 L.Ed. 1081, the court stated:

"Moreover, proof of sales through the use of such push cards was unnecessary. No proof that sales actually resulted from such practices is required to make out a case against the mal-practitioner for a violation of Sec. 5(a) of the Federal Trade Commission Act, 15 U.S.C.A. § 45 (a)."

Cf. Drath v. Federal Trade Commission, 1956, 99 U.S.App.D.C. 289, 239 F.2d 452, 453, certiorari denied 353 U.S. 917, 77 S.Ct. 666, 1 L.Ed.2d 664.

■ Under the rule set forth supra, we feel that the evidence herein fully justified the Examiner's findings and the issuance of a cease and desist order and we so hold.

■■ Petitioners lastly object to the scope of the order, claiming that it is broader than necessary. They seem to infer that if the order is to be sustained it should be changed to include the word "lottery"; that is, "other *lottery* devices", and the words "intended to be used" should be deleted. We see no reason to change the form of the Commission's order and little difference between "punchboards or *other devices* which are designed or intended to be used in the sale or distribution of merchandise * * by means of a game of chance, gift enterprise or lottery scheme" and "punchboards or other *lottery* devices which are", etc. The identical form of this order has been approved in the Peerless case, supra.[2] Furthermore, unless the remedy bears no reasonable relation to the existing unlawful practices, the Commission's discretion as to the scope of the order should not be disturbed. Federal Trade Commission v. National Lead Co., 1957, 352 U.S. 419, 428–429, 77 S.Ct. 502, 1 L.Ed.2d 438. See, also, Federal

2. See Hamilton Mfg. Co. v. Federal Trade Commission, 1952, 90 U.S.App.D.C. 169, 194 F.2d 346, 348 ("intended to be used"); James v. Federal Trade Commission, 7 Cir., 1958, 253 F.2d 78, rehearing denied March 31, 1958, certiorari

denied 358 U.S. 821, 79 S.Ct. 34, 3 L. Ed.2d 62, rehearing denied 358 U.S. 896, 79 S.Ct. 151, 3 L.Ed.2d 123 ("other devices"). Cf. Globe Cardboard Novelty Co. v. Federal Trade Commission, 3 Cir., 1951, 192 F.2d 444, 447–448.

Trade Commission v. Mandel Brothers, 1959, 359 U.S. 385, 392–393, 79 S.Ct. 818, 3 L.Ed.2d 893. " * * * those caught violating the Act must expect some fencing in." Mr. Justice Clark in National Lead Co., supra, 352 U.S. at page 431, 77 S.Ct. at page 510.

The order of the Commission will be affirmed. An order will be entered by this court enforcing it in accordance with the provisions of 15 U.S.C.A. § 45 (c).