[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Carl S. Feen, filed this action against the defendants, Benefit Plan Administrators (BPA) and Citizens Utilities Company (Citizens). Earlier in these proceedings, another judge of this court, Judge Devlin, granted, inter alia, Citizens' motion to strike count nine of Feen's complaint, which alleged that Citizens violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On January 28, 1999, the plaintiff filed a substituted complaint, which alleges the following relevant facts.
Feen is a businessman engaged in the business of finding insurance providers, including self-insured plan providers, to enable companies to save money on their insurance premiums. In 1993, Feen contacted Citizens and was requested to analyze many of Citizens' existing insurance programs to determine if costs could be reduced. In 1994, while conducting a nationwide search for a new third party administrator for Citizens' CT Page 10030 employee health benefit plans, Feen contacted BPA. Feen informed BPA of the potential opportunity BPA had to provide self-insured employee health benefits and stop loss insurance coverage plans to Citizens.
BPA and Feen agreed that if BPA were awarded the administration of Citizens' healthcare plan, and if Citizens obtained stop loss coverage in connection with that plan from Mutual of Omaha, BPA would pay commissions to Feen. BPA and Feen entered into numerous additional agreements concerning commissions to Feen if Citizens awarded any of the different aspects of its employee healthcare plan to BPA, such as its medical plan, dental plan, and flexible spending account. Effective July 1, 1995, Citizens awarded the administration of its employee healthcare plan to BPA, and BPA began paying Feen his commissions as agreed.
On April 12, 1996, Citizens revoked its designation of Feen as its broker of record, effective April 1, 1996, and subsequently told BPA to stop paying commissions and fees to Feen. BPA then informed Feen that Citizens had terminated its existing contract with BPA, and BPA stopped paying Feen any commissions and fees i, n connection with Citizens.
The substituted complaint further alleges that Citizens and BPA have continued in a contractual relationship, whereby BPA continues to provide administrative insurance services to Citizens, and that Citizens terminated the original contract with BPA solely to help BPA avoid paying Feen the fees and commission due him.
Citizens has now filed another motion to strike count nine of Feen's substituted complaint and the prayer for relief related thereto, insofar as they are directed at Citizens. Count nine asserts, in part, a CUTPA violation against Citizens[1] by incorporating claims for breach of contract, breach of implied contract, unjust enrichment, reckless or intentional conduct and intentional interference, as well as asserting a claim against Citizens for aiding and abetting BPA and conspiring and colluding to violate CUTPA. Citizens' moves to strike count nine on three separate grounds: (1) Feen's allegations are merely incidental to the primary trade of Citizens and, therefore, a CUTPA claim cannot be maintained; (2) a CUTPA claim that is based upon aiding and abetting or conspiring cannot be maintained; and (3) Citizens neither aided nor abetted, conspired nor colluded, with BPA to violate CUTPA.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). Its "purpose and scope . . . are identical to those of a demurrer under the old rules of practice. . . ." Cavallo v. Derby Savings Bank, 188 Conn. 281, 283, CT Page 10031449 A.2d 986 (1982). "A motion to strike challenges the legal sufficiency of a pleading. . . . . [I]t admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Citations omitted.) Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). "The role of the trial court [is] to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [plaintiff has] stated a legally sufficient cause of action." Napoletano v. Cigna Healthcare of Connecticut, Inc.,238 Conn. 216, 232-33, 680 A.2d 127 (1996).
It must be observed here that Practice Book § 10-39 authorizes the trial court to strike an entire complaint or any count thereof, but it does not generally authorize the striking of a portion of a count. SeeRowe v. Godou, 209 Conn. 273, 279, 550 A.2d 1073 (1988). When two or more causes of action are joined in a single count, "the proper way to cure any confusion in that regard is to file a motion to revise, not a motion to strike the entire [count]." Id. "If a count in a complaint purports to set out more than one cause of action, a demurrer [now a motion to strike] addressed to the entire count fails if it does not reach all of the causes of action pleaded." Wachtel v. Rosol, 159 Conn. 496, 499,471 A.2d 84 (1970).[2]
 I
Relying, in part, on Judge Devlin's earlier opinion in this case, holding that CUTPA does not apply to incidental business activities, Citizens first moves to strike count nine of Feen's substituted complaint on the ground that Feen's allegations of a CUTPA violation "are merely incidental to the primary trade of Citizens and a . . . [CUTPA] claim cannot be maintained when the service is incidental to the primary business of the company." Feen argues that Judge Devlin's decision "was incorrect in . . . holding that CUTPA does not apply to acts not in the defendant's primary' trade or commerce" and that this court should exercise its discretion and "make its own determination with respect to this issue." Feen further argues that "[a] rule making CUTPA applicable only to a defendant's primary business conflicts both with the express language of CUTPA and the policy that CUTPA should be construed liberally."
"`A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision.' Santoro v. Kleinberger, 115 Conn. 631,638, 163 A. 107 (1931). This principle has been frequently applied to an CT Page 10032 earlier ruling during the pleading stage of a case such as [upon a motion to strike]." Breen v. Phelps, 186 Conn. 86, 98, 439 A.2d 1066 (1982). With this principle in mind, the court examines whether a CUTPA claim may be maintained against a defendant when the activity involved is an incidental business activity, rather than the defendant's primary business activity.
General Statutes § 42-110b(a), states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. "Trade or commerce" is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes §42-110a(4).
When interpreting a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Sears, Roebuck Co. v. Board of Tax Review, 241 Conn. 749,758-59, 699 A.2d 81 (1997).
A review of the express language of CUTPA, along with its legislative history, reflects that there is no textual support for the proposition that only an unfair act or practice committed in a defendant's principal business is actionable under CUTPA. "CUTPA, by its own terms, applies to a broad spectrum of commercial activity. The operative provision of the act, [General Statutes] § 42-110b(a), states merely that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Trade or commerce, in turn, is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state. General Statutes § 42-110a (4). The entire act is remedial in character; General Statutes § 42-110b(d) . . . and must be liberally construed in favor of those whom the legislature intended to benefit. . . ." (Internal quotation marks and citations omitted.) Willow Springs Condominium Assn., Inc. v. 7th Brt DevelopmentCorp., 245 Conn. 1, 42, 717 A.2d 77 (1998).
Thus, there is no express textual support for excluding acts only CT Page 10033 incidental to one's principal business from CUTPA's ambit. CUTPA does, however, expressly exclude a variety of commercial transactions from its coverage, but it does not provide a blanket exemption for incidental activities. See General Statutes § 42-110c;[3] Normand JosefEnterprises v. Connecticut National Bank, 230 Conn. 486, 510, 646 A.2d 1289
(1994). specifically in the CUTPA context, the Connecticut Supreme Court has "repeatedly observed that courts should not interpret legislation to enlarge existing statutory exemptions." Id. "Since CUTPA includes its own exemption section, § 42-110c, it is plain that the legislature recognized that some limitations on the scope of CUTPA were desirable . . . [but] [c]ourts should not create exemptions that the legislature has not enacted." Id., 511-12.
The legislative history of CUTPA reveals that the act was designed to provide protection to a broad class. According to Representative Howard A. Newman, who reported the CUTPA legislation out of committee to the House of Representatives, the act "outlaws unfair methods of competition and unfair or deceptive acts [or] practices in the conduct of any trade or commerce in that state. . . . The act gives honest businessmen great protection in [fighting] deceptive or unscrupulous competitors [or businessmen] who by unfair methods of competition and deceptive advertising, etc. unlawfully divert trade away from law abiding businessmen." 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7323. During the committee hearings, supporters of the bill offered comments similar to those of Representative Newman. For example, Stuart Dear, a member of the board of directors of the Connecticut Consumer Association remarked at the Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 724, that CUTPA will "assist the businessman in not losing out to those members of the business community who won't play fair." Marty Rogol, Legislative Coordinator for the Connecticut Citizens Action Group, stated that CUTPA will make the corporation "accountable for its actions." Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 728. Representative Albert R. Webber stated that he hoped this bill was inclusive: "Hopefully this is an umbrella kind of a measure that will . . . take care of all deceptive and fraudulant (sic) practices." Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 692.
In response to concerns that the language in the original statute limited its application to only those areas specifically recognized by the FTC and the federal courts, CUTPA was amended in 1976. "As originally enacted, [CUTPA] provided that state unfair or deceptive acts or practices were to be those `determined to be' unfair or deceptive by the [Federal Trade Commission] or the federal courts. 1973 Pub. Acts 615, § 2(a). However, the Act was amended in 1976 to provide . . . that, courts in Connecticut [and the named defendant] were to [only] be `guidedCT Page 10034by' federal interpretations of § 5 of the [Federal Trade Commission Act]. The purpose of the change apparently was to permit . . . practices which had not yet been specifically declared unlawful by federal authorities to be nevertheless unlawful under CUTPA.' (Emphasis added.)Bailey Employment System, Inc. v. Hahn, 545 F. Sup. 62, 71 (D. Conn. 1982)." Caldor, Inc. v. Heslin, 215 Conn. 590, 598, 577 A.2d 1009
(1990), cert. denied, 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1053
(1991). In summary then, "although [General Statutes] § 42-110b (b) provides that courts and the [commissioner of consumer protection] shall be guided by the federal interpretations given § 5 of the Federal Trade Commission Act, they are not limited by such interpretations." Id.
This change in General Statutes § 42-110b was in keeping with a long-standing principle which declares that the state is the definitive interpreter of its own laws. Although the federal court's interpretation of a state statute can be persuasive; see General Accident Ins. Co. v.Wheeler, 221 Conn. 206, 212, 603 A.2d 385 (1992); it's interpretation is not binding upon the courts of this state. See Mauro v. Yale-New HavenHospital, 31 Conn. App. 584, 590 n. 4, 627 A.2d 443 (1993). Ultimately, "the state is the final arbiter of its own laws." State v. Menillo,171 Conn. 141, 147, 368 A.2d 136 (1976).
Earlier in these proceedings, as observed supra, the court (Devlin,J.), held that the plaintiff's CUTPA claim could not be maintained because it related to an activity that was incidental to the defendant's primary business. In reaching this conclusion, the court relied on United States District Court opinions and the few Superior Court opinions that have followed the holdings of those federal cases. This line of cases derived from Colonial Motors, Inc. v. New York Design Group, Inc., Civil No. H-86-206 AHN (D.Conn. June 30, 1986), in which the court held that to establish a CUTPA violation, the "plaintiff must at least allege and establish that the challenged unfair or deceptive act occurred in the conduct of defendant's `trade or commerce. (Emphasis added.) Neither Colonial Motors, Inc. v. New York Design Group, Inc., supra, nor the subsequent cases following it, including those cases relied on in this court's earlier memorandum of decision, cited any independent support or rationale for that proposition, or, more specifically, for the proposition that an unfair or deceptive act or practice is not actionable if relates only to an incidental business activity rather than to the defendant's primary business activity. While this court, in construing CUTPA, is guided by the interpretations of the federal courts to Section 5 of the Federal Trade Commission Act; General Statutes § 42-110b(b);Colonial Motors and its progeny interpreted CUTPA, not the FTCA.
Because this court is unable to find any Connecticut Supreme or Appellate Court authority directly on this issue, and "because the governing statutes in Massachusetts are virtually identical to our own . CT Page 10035 . . [we will look] to the reasoning and decisions of the Supreme Judicial Court of Massachusetts with regard to the scope of CUTPA." (Internal quotation marks omitted.) Normand Josef Enterprises v. ConnecticutNational Bank, supra, 230 Conn. 521.
The Massachusetts courts have held repeatedly that even a single isolated action that occurs in a "business context" may fall within the definition of trade or commerce under the unfair trade practices act. SeeBegelfer v. Najarian, 381 Mass. 177, 189-91, 409 N.E.2d 167 (1980) (any transaction that takes place in a business context may be covered by the act); Rex Lumber Co. v. Acton Block Co., Inc., 29 Mass. App. 510,562 N.E.2d 845, 850 (1989) (isolated transactions occurring in a business context fall under the unfair trade practices act); Lynn v. Nashawaty,12 Mass. App. 310, 423 N.E.2d 1052, 1054 (1981) (owner's selling of store and inventory was done in a business context and is, therefore, covered by the act).
"[The Supreme Judicial Court of Massachusetts] do[es] not read § 11 [of M.G.L.A. § 93A) as requiring that a commercial transaction must take place only in the ordinary course of a person's business or occupation before its participants may be subject to liability under G.L. c. 93A, § 11." Begelfer v. Najarian, supra, 381 Mass. 191. The legislative definitions of "trade" and "commerce" are intentionally open-ended so as to not exclude the broad range of potential activities. See Riseman v. Orion Research, Inc., 394 Mass. 311, 313, 475 N.E.2d 398
(1985). The phrase "unfair or deceptive acts or practices in the conduct of any trade or commerce" must be read to apply to those acts or practices which are perpetrated in a business context. Lantner v. Carson,374 Mass. App. 606, 611, 373 N.E.2d 973 (1978). That phrase is also broad enough to embrace some reprehensible acts committed in a business context that would elude conventional definitions and categories. SeeDoliner v. Brown, 21 Mass. App. 692, 489 N.E.2d 1036, 1040 (1986).
This court concurs with the courts of Massachusetts and, respectfully, finds their reasoning more persuasive than the holding in ColonialMotors, Inc. v. New York Design Group, Inc., supra. CUTPA, like the Massachusetts unfair trade practices act, is an expansive remedial statute, and must be read to encompass a broad range of business activities. "[O]ur General Assembly, in adopting the sweeping "language of § 5(a)(1) of the FTCA, deliberately chose not to define the scope of unfair or deceptive acts proscribed by CUTPA so that courts might develop a body of law responsive to the marketplace practices that actually generate such complaints. . . . Predictably, [therefore,] CUTPA has come to embrace a much broader range of business conduct than does the common law tort action. . . . Moreover, [b]ecause CUTPA is a self-avowed remedial measure, General Statutes § 42-110b (d), it is CT Page 10036 construed liberally in an effort to effectuate its public policy goals. . . . Indeed, there is no . . . unfair method of competition, or unfair [or] deceptive act or practice that cannot be reached [under CUTPA]. Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 705, remarks of Attorney Robert Sils, Dept. of Consumer Protection." (Internal citations and quotation marks omitted.) Associated InvestmentCo. v. Williams Associates IV, 230 Conn. 148, 157-58, 645 A.2d 505
(1994).
Moreover, to limit actionable unfair acts or practices to those committed only in the course of a defendant's principal trade could lead to irrational and bizarre results. "Let us test this case by supposing a different set of facts." Middletown Savings Bank v. Bacharach,46 Conn. 513, 525 (1879). Suppose that a businessperson is seeking to branch out into one or more secondary businesses and acts in a patently unfair and deceptive manner in seeking this expansion. Is he or she to be given free reign to do so in pursuing these secondary businesses or business lines because they are merely incidental to the primary business? "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." Schreckv. Stamford, 250 Conn. 592, 596-97, 737 A.2d 916 (1999). "[T]his court traditionally eschews construction of statutory language which leads to absurd consequences and bizarre results." (Internal quotation marks omitted.) Stamford Ridgeway V. Board of Representatives, 214 Conn. 407,427, 572 A.2d 951 (1990).
In keeping with the broad remedial nature of CUTPA and the direction of the Connecticut Supreme Court to look to the Supreme Judicial Court of Massachusetts in determining the scope of CUTPA, this court holds that an unfair or deceptive act or practice committed in a "business context," may fall within the coverage of General Statutes § 42-110b (a) as being an "unfair or deceptive [act] or [practice] in the conduct of any trade or commerce" even if it is incidental to the defendant's business. Citizens' motion to strike count nine is denied on the ground that a CUTPA claim can be maintained when the service is incidental to the primary business of the company, as long as the service is conducted in a "business context". Therefore, the court must deny the motion to strike in its entirety.[4]
 II
Citizens next moves to strike count nine of Feen's complaint on the ground that a CUTPA claim that is based upon aiding and abetting or conspiring cannot be maintained. Citizens argues that "CUTPA requires that the party `engage' in the conduct," and "[u]nless the `aiding and abetting' relates to Citizens' primary business, such allegations cannot CT Page 10037 come within CUTPA."
Feen argues, in part, that "the Connecticut Supreme Court has recognized that aiders and abettors and co-conspirators may be liable under CUTPA . . . and . . . an aider and abettor or coconspirator need not have committed a primary violation in order to be jointly liable along with one who does."
Whether there is accessory or conspiratorial liability pursuant to a statutory tort is a matter of statutory intent. See Connecticut NationalBank v. Giacomi, 233 Conn. 304, 318, 659 A.2d 1166 (1995).[5] We apply the same rules of statutory construction discussed in part I, supra. Id., 318-19.
The statutory text of CUTPA, itself, is silent on this issue except that it explicitly states that "[i]t is the intention of the legislature that this chapter [Ch. 735a, General Statutes § 42-110a et seq.] be remedial and be so construed." General Statutes § 42-110b(d). Notably, our Supreme Court has also stated that "[i]n prior case law under CUTPA, we have interpreted the statute generously to implement its remedial purposes even without a specific statutory basis for our decision. In Web Press Services Corp. v. New London Motors, Inc.,203 Conn. 342, 363, 525 A.2d 57, following remand, 205 Conn. 479,533 A.2d 1211 (1987), for example, we concluded that `knowledge of falsity, either constructive or actual, need not be proven to establish a violation of CUTPA.' In Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510, 520, 461 A.2d 938 (1983), we noted that `the liberal construction to which a remedial statute such as CUTPA is entitled' was a persuasive factor in our construction of its coverage to include unfair trade practices engaged in by attorneys. In each case, we were undaunted by the absence of specific statutory language to support our decision." Kim v. Magnotta, 249 Conn. 94, 108, 733 A.2d 809 (1999) (holding that, even after four months time, a CUTPA violation can be the basis for setting aside a stipulated judgment.)
Amidst this statutorily and judicially imposed environment, the court examines the applicable case law of Connecticut, as well as the case law of Massachusetts and of the federal courts interpreting the Federal Trade Commission Act.
Although neither the Supreme or Appellate courts have specifically held that a CUTPA claim may be based upon accessory liability, several Connecticut cases have upheld CUTPA claims grounded on accessory and conspiratorial conduct. See, e.g., Connecticut National Bank v. Voog,233 Conn. 352, 368, 659 A.2d 172 (1995) (defendant's counterclaim was proper where it alleged that the plaintiff had conspired with and provided CT Page 10038 aid to another to fraudulently induce the defendant to make a valueless purchase); Dudrow v. Young, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 144211 (September 14, 1999, Hodgson, J.) ("allegations of aiding and abetting fraudulent nondisclosures . . . would support a CUTPA claim"); Roncari Development Co. v. GMGEnterprises, Inc., 45 Conn. Sup. 408, 428-29, 718 A.2d 1025 (1997) (motion to strike denied where plaintiff's CUTPA claim was based upon a conspiracy theory); Connecticut National Bank v. Ealahan Electric Co., Superior Court, judicial district of New London at New London, Docket No. 519422 (November 6, 1992, Hendel, J.) (motion to strike denied where defendant's counterclaim alleged that the plaintiff violated CUTPA by conspiring with another who used the assets of the defendant in a practice that was immoral, unethical and unscrupulous); Yankee Realty v.North Haven Lanes, Inc., judicial district of New Haven at New Haven, Docket No. 262567 (August 18, 1992, Zoarski; J.) (plaintiff pleaded a legally sufficient cause of action under CUTPA where it alleged that one of the defendants knew of the other's obligation to pay the plaintiff but agreed or otherwise conspired with the other to deprive and defraud the plaintiff). Admittedly, these cases are not dispositive. "It is the general rule that a case resolves only those issues explicitly decided in the case." State v. Ouellette, 190 Conn. 84, 91, 459 A.2d 1005 (1983).
A review of federal case law also reveals that accessory liability not only exists under the FTCA but was well-settled when the General Assembly enacted CUTPA in the 1970's. See Gay Games, Inc. v. Federal TradeCommission, 204 F.2d 197 (10th Cir. 1953) (distributor of lottery-type devices aided, abetted and induced manufacturers, retailers and wholesalers to engage in the sale of merchandise by lottery in violation of public policy and the FTCA); Globe Cardboard Novelty Co., Inc. v.Federal Trade Commission, 192 F.2d 444, 446 (3d Cir. 1951) (those who aid and abet others in committing unfair trade practices are themselves liable for unfair practices); Chas. A. Brewer Sons v. Federal TradeCommission, 158 F.2d 74, 77 (6th Cir. 1946) (party committed unfair practices by aiding, abetting and inducing others to use unfair or deceptive acts or practices); Deer v. Federal Trade Commission,152 F.2d 65, 66 (2d Cir. 1945) (it is not necessary to prove that a party actually participated in an unfair operation; it is enough that it aided and abetted in such actions); Modernistic Candies, Inc. v. Federal TradeCommission, 145 F.2d 454 (7th Cir. 1944) (the circumstances surrounding an unfair practice should be viewed as a whole, and those who aid and abet others in engaging in unfair practices are themselves so engaged).
Massachusetts also recognizes claims for accessory liability pursuant to its unfair trade practices act. See Hanover Ins. Co. v. Sutton,46 Mass. App. 153, 705 N.E.2d 279, 293-94, cert. denied,709 N.E.2d 1121 (1999) (party violated M.G.L.A. § 93A by aiding and CT Page 10039 abetting another in breaching his fiduciary duty); Jurgens v. Abraham,616 F. Sup. 1381, 1387 (D. Mass. 1985) (one who directly aids another in committing a fraud may be liable under M.G.L.A. § 93A); see also M. Gilleran, Massachusetts Practice Library: The Law of Chapter 93A (Cumulative Supplement, November 1999) § 6:11.5, p. 112-13.
In addition to accessory liability, liability for acts of conspiracy have also been recognized pursuant to the Massachusetts unfair trade practices act. See Aetna Casualty Surety Co. v. P B Autobody, 43 F.3d 1546
(1st Cir. 1994) (M.G.L.A. § 93A includes acts of fraud where parties conspired and acted in concert to submit fraudulent auto body repair claims to insurance company); see also M. Gilleran, op cit. § 6:11.7, p. 113, and cases cited therein.
In light of the remedial nature of CUTPA, the mandate that it is to be interpreted "generously" to implement its remedial purpose; Kim v.Magnotta, supra, 249 Conn. 108; and on the basis of the foregoing authorities, this court holds that a person who aids and abets or conspires with another who commits an unfair trade practice may be liable for the other's action. As stated by Mr. Justice Brandeis, "[t]hat a person is a wrongdoer who so furnishes another with the means of consummating a fraud has long been a part of the law of unfair competition." Federal Trade Commission v. Winsted Hosiery Co.,258 U.S. 483, 494, 42 S.Ct. 384, 386, 66 L.Ed. 729 (1922).
 III
The final ground for Citizens' motion to strike is that "Citizens neither aided and abetted BPA nor combined, conspired and colluded with BPA to violate CUTPA." Specifically, Citizens argues that count nine of Feen's complaint states an insufficient cause of action for aiding and abetting and conspiring and colluding, because Citizens had a right to terminate its relationship with Feen, and it also had a right to terminate its contract with BPA.
Feen argues that Citizens did not have the right to aid and abet BPA by terminating its relationship with Feen in bad faith solely to help BPA avoid paying Feen monies he had earned. Feen also argues that Citizens did not have the right to conspire and collude with BPA to terminate the contract between BPA and Citizens and enter into a new contract solely to deprive Feen of the fees and commissions he had already earned.
With respect to claims of civil conspiracy, Connecticut follows the principle stated in 4 Restatement (Second), Torts, § 876 (1977), which states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a CT Page 10040 tortious act in concert with the other or pursuant to a common design with him . . . ."[6] See Lamb v. Peck, 183 Conn. 470, 472, 441 A.2d 14
(1981); Hart, Nininger Campbell Associates v. Rogers, 16 Conn. App. 619,629, 548 A.2d 758 (1988); Miles v. Perry, 11 Conn. App. 584,608, 529 A.2d 199 (1987); see also Sparrow v. Bromage, 83 Conn. 27,28, 74 A. 1070 (1910); Talit v. Peterson, 44 Conn. Sup. 490,492-97 692 A.2d 1322 (1995) (Blue, J.) (discussing the origins and elements of civil conspiracy in Connecticut).
With respect to claims of aiding and abetting, Connecticut has adopted 4 Restatement (Second), Torts § 876(b) (1977), which states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." See ConnecticutNational Bank v. Giacomi, supra, 242 Conn. 17, 63; Slicer v. Quigley,180 Conn. 252, 259, 429 A.2d 855 (1980); Carney v. DeWees, 136 Conn. 256,262, 70 A.2d 142 (1949).
Section 876(c) of 4 Restatement (Second), Torts states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . . (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." The only Connecticut Supreme Court reference to this section is contained in Gervais v. Foehrenbach, 149 Conn. 461, 464, 181 A.2d 253 (1962). In that case, the defendant, Foehrenbach, forced the plaintiff's car to stop, and Foehrenbach and his codefendant, Cook, got out of their car. Cook proceeded to assault the plaintiff, Gervais, and Foehrenbach assaulted the passenger in Gervais' automobile. The court would not accept Foehrenbach's argument that he was not responsible for the plaintiff's injuries because he did not assault the plaintiff, stating that the defendants acted in concert and were joint tortfeasors.
The allegations of the ninth count of Feen's complaint, when viewed in the light most favorable to Feen, state a sufficient cause of action under under § 876(a), (b) and (c), supra, of the Restatement (Second), Torts. With respect to a conspiracy claim under § 876(a), Feen alleges the following facts: Citizens and BPA agreed and acted in concert to terminate Feen as Citizens broker of record; Citizens and BPA agreed and acted together and terminated their contract so that they could enter into a new contract excluding all reference to Feen; BPA and Citizens did enter into a new contract, providing for the same services, but with no mention of Feen; and, these acts were done solely to avoid paying Feen monies he had rightfully earned. CT Page 10041
With respect to the claim for aiding and abetting under § 876(b) of the Restatement (Second), Torts, Feen alleges the following facts: Citizens knew of Feen's agreement and business relationship with BPA; Citizens knew that BPA intended not to pay Feen the monies he had earned; Citizens gave substantial assistance or encouragement to BPA by terminating its contract with BPA so that BPA could enter into a new contract with Citizens, providing for the same services, but which excluded any reference to Feen; and, Citizens removed Feen as its broker of record to further aid BPA in avoiding to pay Feen his fees and commission.
With respect to § 876(c) of the Restatement (Second), Torts, Feen alleges that Citizens gave substantial aid to BPA to enable BPA to get out of paying Feen monies he had earned and that Citizens, itself, breached its duty to Feen by removing him as its Broker of record and allowing its contract with BPA to be terminated in order to deprive Feen of the fees and commissions he had earned, and by then entering into a new contract with BPA that did not mention Feen.
The factual allegations of count nine satisfy the criteria of each sub-section of § 876 of the Restatement (Second), Torts.
 IV
In conclusion, the court holds that a CUTPA claim may be brought against a person for violations that occur in a "business context," regardless of whether those violations relate to the primary activity of the person's business or an activity which is incidental to the primary activity of the business. The court also holds that a CUTPA claim may be based upon allegations of aiding and abetting as well as conspiring and colluding, and that the ninth count of the plaintiff's complaint sufficiently alleges each of these bases. Thus, Citizens' motion to strike count nine is denied.
BY THE COURT
Bruce L. Levin Judge of the Superior Court